The following constitutes
the order of the court. Signed January 15, 2014

_____
M. Elaine Hammond
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br>ARNAUD SCOMPARIN,<br><br>_____ Debtor./ | Case No. 12-49996 MEH<br>Chapter 13 |
| ARNAUD SCOMPARIN,<br><br>Plaintiff,<br>v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE INDYMAC INDX MORTGAGE TRUST 2007-AR 21IP, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-AR21IP UNDER THE POOLING AND SERVICING AGREEMENT DATED OCTOBER 1, 2007, and<br><br>ONEWEST BANK, FSB,<br><br>_____ Defendants./ | Adv. No. 13-04054 |

<u>MEMORANDUM DECISION</u>

**I.     Introduction**

Plaintiff, Arnaud Scomparin, filed a complaint to determine the extent and validity of a lien on his residence and to receive additional related relief. Defendants, Deutsche Bank National Trust Company, as

1

Trustee for the IndyMac INDX Mortgage Loan Trust 2007-AR21IP ("Deutsche Bank") and OneWest Bank, FSB ("OneWest") filed a motion for judgment on the pleadings (the "Motion"), asserting that Plaintiff failed to state any claim upon which the court can grant relief. Because the Motion and responding pleadings included requests for judicial notice, it is treated as a motion for summary judgment.

After considering the pleadings submitted, the court finds that Defendants are entitled to summary judgment.

**II.     Factual and Procedural History**

    **a.   Plaintiff's Mortgage, Assignments, and Default**

Plaintiff obtained a mortgage loan of $572,000.00 (the "Loan") from E-LOAN, Inc. ("E-Loan") on October 6, 2004 in order to purchase a home located in Dublin, California 94658 (the "Residence"). The Loan was evidenced by a promissory note (the "Note") that was secured by a Deed of Trust (the "DOT"), recorded on October 13, 2004, which encumbers the Residence.

The DOT lists E-Loan as the lender, First American Title ("First American") as the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary and nominee for the lender and lender's successors and assigns.

After its origination, the Loan was securitized as part of the IndyMac INDX Mortgage Trust 2007-AR21IP (the "Securitized Trust") pursuant to a Pooling and Servicing Agreement (the "PSA") governed by New York law.

The DOT was assigned by MERS, as nominee for E-Loan, to Deutsche Bank on August 12, 2011 via an Assignment Deed of Trust recorded on August 24, 2011 (the "Assignment"). The Assignment Deed of Trust was executed by "JC San Pedro" as "Assistant Secretary" of MERS.

Plaintiff defaulted on the Loan and, on or about August 26, 2011, OneWest c/o NDEx West, LLC (the current servicer for the Loan) caused a Notice of Default and Election to Sell Under Deed of Trust to be recorded against the Property.

Thereafter, Plaintiff entered into a repayment plan with OneWest, but ultimately failed to perform and affirmatively "refused to pay his monthly obligations under the N[ote]."

On November 21, 2011 NDEx West, L.L.C. ("NDEx" the current trustee under the DOT) noticed (the "Sale Notice") a foreclosure sale (the "Trustee's Sale") for December 20, 2011. The Sale Notice was recorded on November 23, 2011 and signed by Rio Juarez on behalf of NDEx.

On December 26, 2012, Plaintiff filed a chapter 13 petition in this court.

### b. The Complaint

On March 11, 2013, Plaintiff filed an Adversary Complaint for: (1) Declaratory Relief; (2) Cancellation of Instruments; (3) Unfair Practices under California and Business Code § 17200; and (4) Violation of 15 U.S.C. § 1641(g), the Truth in Lending Act ("TILA").

#### (1) Claims I and II: Declaratory Relief and Cancellation of Instruments

Plaintiff's first claim ("Claim I") seeks declaratory relief on the grounds that the Assignment is void and Deutsche Bank does not have a valid security interest in the property. Plaintiff asserts that Defendant Deutsche Bank does not hold a valid security interest and perfected lien because the Note was not securitized pursuant to terms of the PSA. Plaintiff further alleges that Defendants made knowingly false representations regarding their interest in the subject property to induce payments from Plaintiff.

Plaintiff's second claim ("Claim II") seeks a cancellation of: (1) the Assignment of Deed of Trust; (2) the 2011 Notice of Default; (3) the 2011 Substitution of Trustee; (4) the Notice of Trustee's Sale; (5) the 2012 Substitution of Trustee; and (6) the 2012 Notice of Default. Plaintiff states that Defendants OneWest and MERS are not agents for the beneficiary of the DOT. Consequently, pursuant to California Civil Code § 2924(a)(1)(C), Plaintiff contends that OneWest and MERS recorded Notices of Default and other subsequent foreclosure-related documents without the authority to do so, and Plaintiff seeks cancellation of those documents.

#### (2) Claim III: Unfair Business Practices

Plaintiff's third claim ("Claim III") alleges that Defendants have committed one or more acts of unfair competition within the meaning of California Business & Professions Code § 17200, *et seq.*, by allegedly engaging in unfair, unlawful, and fraudulent business practices. Plaintiff contends that Defendants acted in a manner to mislead Plaintiff into believing that Deutsche Bank has a security interest in the Property. In

3

addition, Plaintiff contends that Defendants facilitated, aided and abetted unlawful debt collection on the Note and unlawfully initiated foreclosure proceedings on the Property. Plaintiff asks the court to grant injunctive relief, restitution, and attorney's fees.

### (3) Claim IV: TILA Violations

Plaintiff's fourth claim ("Claim IV") alleges that Defendant Deutsche Bank failed to comply with § 131(g) of the Truth in Lending Act by failing to provide notice to the Plaintiff within 30 days of the assignment of the Loan to Deutsche Bank, as required by that subsection. Plaintiff asks the court to award, among other things, statutory damages and attorney's fees.

### c. The Answer

Defendants filed an Answer with the court on April 9, 2013 alleging the following affirmative defenses: (1) failure to state a claim; (2) failure to mitigate; (3) waiver; (4) estoppel; (5) contribution; (6) claims barred by statute of limitations; (7) unclean hands; (8) claims barred by statute; (9) that Defendants are not liable as successors; and (10) Plaintiff's failure to tender his outstanding loan obligation.

### d. The Motion

Defendants filed a Motion for Judgment on the Pleadings on June 26, 2013, seeking dismissal of the Plaintiff's complaint for insufficiencies in all four of Plaintiff's asserted claims (the "Motion"). In support, Defendants filed two Requests to Take Judicial Notice (on June 26 and September 9, 2013) as well as a supporting Declaration by Charles Boyle, an officer of OneWest, on September 9, 2013.

### (1) Claims I and II: Declaratory Relief and Cancellation of Documents

Defendants first allege, generally, that Plaintiff has no standing to seek invalidation of the Note, DOT, assignments or foreclosure because Plaintiff is neither a party to nor an intended beneficiary to the PSA. Further, according to Defendants, a similar analysis under New York law leads to the same conclusion; Plaintiff is not a third party beneficiary to the PSA and thus has no standing to enforce its terms.

In response to Plaintiff's allegations regarding the allegedly improper securitization of the loan, Defendants argue that Plaintiff's position is contrary to the case law, which Defendants argue largely rejects

4

the notion that an assignment to a trust pool or securitization divests the holder of the security interest of that interest. Consequently, Defendants urge the court that any argument based on that notion must fail.

Defendants allege that the foreclosure proceedings were proper, contrary to Plaintiff's arguments that Defendants had no legal right to conduct the proceedings, because the case law allows for non-judicial foreclosure regardless of whether the foreclosing party is in possession of the underlying note.

Defendants further allege that Claim I fails because it is not an independent claim and is duplicative of other claims alleged in the Complaint. In support, Defendants cite *Mangindin v. Washington Mut. Bank*, 637 F.Supp.2d 700, 707-08 (N.D. Cal. 2009) for the premise that declaratory relief is duplicative and unnecessary when the declaratory relief sought by a plaintiff is entirely commensurate with the relief sought through its other cause of action. Defendants further argue that declaratory relief is a remedy and cannot stand on its own as an independent claim, and declaratory relief as a remedy would be inappropriate here nevertheless because other remedies are available.

Defendants assert that Claim II "is really a simple claim for wrongful foreclosure of the property" and argue that such a claim must be accompanied by an offer to tender the entire disputed debt to the foreclosing party, citing *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 578 (Ct. App. 1984). Since Plaintiff has not and cannot do so, Defendants argue, Plaintiff's Claim II must fail.

### (2) Claim III: Unfair Business Practices

Defendants allege that Claim III fails for lack of specificity and particularly. Defendants argue that the Complaint fails to both 1) identify any state law that the Defendants have violated to form a basis for a claim under Cal. Bus. & Profs. Code §§ 17200, *et seq.*; and 2) allege any specific, particular acts of wrongdoing on the part of the Defendants.

### (3) Claim IV: TILA Violations

Defendants finally allege that Claim IV is time barred. Plaintiff's Complaint alleges that Deutsche Bank failed to advise him of the Assignment of the DOT, recorded on August 24, 2011, however Plaintiff filed his Complaint in this adversary proceeding on March 11, 2013. Consequently, Defendants argue, the one-year statute of limitations for pursuing a claim under 15 U.S.C. § 1641 bars Plaintiff's Claim IV.

5

**e. The Response**

Plaintiff responded to the motion on August 5, 2013 with a Memorandum of Points and Authorities in Support of Opposition to Defendants' Motion for Judgment on the Pleadings (the "Response"). In further support, Plaintiff filed two Requests to Take Judicial Notice (on August 5 and September 10, 2013) as well as a supporting Declaration by Mr. Scomparin on September 10, 2013.

**(1) Claims I and II: Declaratory Relief and Cancellation of Instruments**

In the Response, Plaintiff argues that he need not be a party to the PSA to allege that the Deed of Trust, Note, and Assignment are void. He reasserts his position that, under New York law, since the Transfer allegedly did not comply with the PSA's requirements, there was no actual delivery or valid assignment of the Note to the trust or to Deutsche Bank as trustee. Consequently, he argues that the Transfer of the Note was void.

Plaintiff argues in his Response that Defendants misstate his allegations regarding the effect of the securitization of the Loan. Plaintiff clarifies that it is not his position that the securitization of the Loan rendered the Loan unenforceable. Rather, Plaintiff takes the position that the securitization of the loan in violation of the terms of the PSA rendered the Loan unenforceable.

In response to Defendants' assertions regarding their standing to foreclose on the Property, Plaintiff reasserts his position that the foreclosure proceedings were improper. Plaintiff cites Cal. Civ. Code § 2494(a)(6), the California Homeowners Bill of Rights ("HOBOR"), in asserting that the initiation of a non-judicial foreclosure must be within the scope of the authority designated by the holder of a beneficial interest under the mortgage or deed of trust, and alleges that neither Defendant has such authority.

Plaintiff then argues that a declaratory judgment is appropriate as a separate cause of action pursuant to the federal Declaratory Judgment Act, and asks the court to deny Defendants' motion with respect to Claim II. While Plaintiff acknowledges the tender requirement for foreclosure actions, Plaintiff's Response notes an exception to the rule for suits that attack the validity of the underlying debt. Because Plaintiff's Claim II calls into question the validity of the Note, and because Plaintiff alleges malfeasance by Defendants, Plaintiff asks the court to recognize that exception and deny Defendants' motion with respect to Claim III.

6

**(2) Claim III: Unfair Business Practices**

Plaintiff then argues that Claim III should survive, as he has alleged the violation of several statutes which would provide a basis for a claim under § 17200, including: (1) noncompliance with New York Trust law; (2) fabrication of an assignment; and (3) fraud against the borrower and the County Recorder.

**(3) Claim IV: TILA Violations**

Finally, Plaintiff argues that the issue of whether Claim IV is time barred is indeterminable without further discovery, and thus asks the court to deny Defendants' motion with respect to the TILA claim.

### f. The Reply

Defendants filed a Response to Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings on August 12, 2013 (the "Reply").

**(1) Claims I and II: Declaratory Relief and Cancellation of Instruments**

Defendants' Reply first addresses Plaintiff's argument regarding New York trust law, contending that even assuming for the sake of argument that the documents memorializing the Loan were not properly deposited into the securitized trust, Defendants would still have standing to foreclose. Specifically, if no securitization of the Loan was accomplished, then whomever possesses the blank-endorsed Note memorializing the Loan (itself a negotiable instrument) would be authorized to enforce the debt. Defendants thus argue that because they are in possession of the blank-endorsed note, Plaintiff's arguments regarding the proper securitization of the Loan are irrelevant.

With respect to Plaintiff's argument that Defendants do not have the right to foreclose under HOBOR, Defendants note that HOBOR is inapplicable to the foreclosure because the statute, effective as of January 1, 2013, does not apply retroactively. Plaintiff's argument must fail, according to Defendants, as the foreclosure commenced in August of 2011.

Defendants again argue that Plaintiff's claim regarding declaratory relief should fail, as other available remedies exist for the Plaintiff in this case. Defendants emphasize that declaratory relief would be unnecessary and duplicative, and should thus not be allowed by the court.

7

Defendants rebut Plaintiff's argument regarding the validity exception to the tender rule, as, according to Defendants, none of the exceptions to the tender rule apply to the facts in this case. Defendant argues that Plaintiff has not attacked the validity of the debt memorialized by the Note; rather, Plaintiff has merely challenged Defendants' right to collect the debt. Likewise, Plaintiff has not alleged a counterclaim or set-off against the beneficiary of the Deed of Trust. Nor has he argued or alleged that it would be inequitable for him to tender the outstanding Loan amount. Defendants further note that Plaintiff has not alleged that the Deed of Trust is void on its face. Consequently, Defendants argue that the tender rule applies here and that, consequently, Plaintiff's argument must fail.

### (2) Claim III: Unfair Business Practices

Defendants argue that Plaintiff's § 17200 argument must fail because Plaintiff has not alleged a viable borrowed claim to underlie his § 17200 claim. According to Defendants, Plaintiff's New York trust law argument does not provide a basis because the blank-endorsed Note in possession of the Defendants is enforceable regardless of whether the Loan was properly securitized. Plaintiff's arguments regarding fabrication of the Assignment and defrauding the County Recorder must also fail, Defendants argue, because Plaintiff's allegations in support of those arguments are unsupported by the facts and by the case law.

### (3) Claim IV: TILA Violations

In response to Plaintiff's assertion that more discovery is required to determine whether the TILA claim falls outside of the one-year statute of frauds for bringing forth such claims, Defendants point to Plaintiff's assertion in the Complaint that either the execution of the Assignment DOT on August 12, 2011 or the recordation of the Assignment DOT on August 24, 2011 "[brought] it within the guidelines of TILA's notification requirements." Based on that assertion, Defendants maintain their position that Plaintiff's TILA action is time barred.

### g. Conversion to Motion for Summary Judgment

On August 19, 2013, the court heard argument on Defendants' Motion for Judgment on the Pleadings and took the matter under submission. Included with the moving papers were several exhibits outside the pleadings. Consequently, by rule, the motion must be treated as a motion for summary judgment. As such, all

8

parties must be provided a reasonable opportunity to present all material pertinent to the summary judgment motion. *See* Fed.R.Civ.P. 12(d); Fed. R. Bankr. P. 7012(b). On August 21, 2013, the court entered an Order Re: Conversion to Summary Judgment Under Rule 7012, requiring that the parties submit additional materials pertinent to the Motion by September 10, 2013 (the "Conversion Order"). Both Plaintiff and Defendants subsequently submitted requests for judicial notice and supplemental declarations, which the court has reviewed and considered in this judgment.

### III. Issues

1) Has Defendant Deutsche Bank demonstrated that it has a valid, enforceable interest in the Note and Deed of Trust?

2) Is Defendant entitled to summary judgment?

### IV. Jurisdictional Statement

Jurisdiction is proper for the matters decided under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (K).

### V. Discussion

At the outset, Plaintiff does not dispute that he executed a promissory note in favor of E-Loan in the amount of $572,000.00 secured by the DOT in order to finance the purchase of the Property. Plaintiff also does not dispute that he is currently in default on his obligation under the Note; nor does Plaintiff argue that he has received demands for payment from different entities. What remains in dispute is whether Defendant Deutsche Bank has a right to enforce the Note or DOT, the determination of which affects whether Plaintiff's other claims can survive. Plaintiff argues that Defendants lacked the right to enforce the Note and DOT because they hold no interest in the Note.

#### a. Applicable Standards

Rule 7012(b) applies Civil Rule 12(b)-(i) to adversary proceedings in bankruptcy. Civil Rule 12(d) instructs that if a court considers matters outside of the pleadings when deciding a motion for judgment on the pleadings brought under Civil Rule 12(c), the motion must be treated as a motion for summary judgment under Civil Rule 56, and the parties must be given a reasonable opportunity to present all the material that is

9

pertinent to the motion. Civil Rule 12(d). Civil Rule 56 is made applicable in a bankruptcy case by Rule 7056.

When determining whether parties were given a reasonable opportunity to present material pertinent to summary judgment, the Ninth Circuit looks to whether the parties were fairly apprised the court would look beyond the pleadings and treat the matter as one for summary judgment. *Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). "A party is 'fairly apprised' that the court will in fact be deciding a summary judgment motion if that party submits matters outside the pleadings to the judge and invites consideration of them." *Cunningham v. Rothery* (*In re Rothery*), 143 F.3d 546, 549 (9th Cir. 1998) (citing *Grove v. Mead School Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985).

The Motion relies on exhibits beyond the pleadings, and to comply with Civil Rule 12(d), the court must evaluate it as one for summary judgment. The parties have been fairly apprised: they received notice of the Conversion Order and each filed supplemental documents for summary judgment consideration.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2550, 91 L.Ed.2d 265, 273 (1986). The moving party has the burden of showing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). When ruling on a motion for summary judgment, a court must view all the evidence in the light most favorable to the nonmoving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001). A trial court can only consider admissible evidence in ruling on a motion for summary judgment. *See* Civil Rule 56(e); *Beyene v. Coleman Sec. Servs.*, Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).

Once the movant satisfies this burden, the burden shifts to the non-moving party. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. The "nonmoving party must go beyond the pleadings and, by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007). When contesting a

10

moving party's facts, Civil Rule 56(e) requires that the non-movant's response, and not merely other papers, "'set forth specific facts' establishing a genuine issue." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) (quoting Civil Rule 56(e)).

"Material" facts are those which may affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). Facts that do not affect the outcome under applicable substantive law are not material on a motion for summary judgment. *Id.* A dispute is "genuine" where the evidence is such that a reasonable finder of fact could rule for the nonmoving party. *Id.* The existence of a "scintilla of evidence" is insufficient. *Id.* at 252. If the moving party has carried its burden for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986).

Applying this legal standard to the present case, Defendants' Motion and additional filings must demonstrate that there is no genuine dispute about material facts, and that they are entitled to summary judgment as a matter of law. For reasons explained below, Defendants have satisfied this burden and summary judgment will be granted.

### b. Claim I: Deutsche Bank's Standing to Enforce the Note

In essence, Plaintiff's Claim I for declaratory relief challenges Defendant Deutsche Bank's standing to enforce the Note on the basis that its assignment is void and that it does not have a valid security interest in the Property.

In support of its Motion, Deutsche Bank provided the following evidence:

*Note:* Copy of the original Note, endorsed by the original lender E-Loan, Inc. to IndyMacBank, F.S.B. ("IndyMac"). The Note is further endorsed in blank by IndyMac. The declaration of Charles Boyle, Vice President of Default Risk Management – Litigation at OneWest, asserts that OneWest, as servicer for the Loan, has authority and control over the Loan's "collateral file,"

including the original Note, and that the Note has been transferred to OneWest's counsel to assist in its defense of this adversary proceeding.

*Transfer into the PSA:* IndyMac, as Seller and Servicer, entered into the PSA with Deutsche Bank as Trustee. Schedule I to the PSA is a Mortgage Loan Schedule identifying the mortgage loans deposited into the trust. A redacted copy of the Mortgage Loan Schedule reflecting the deposit of the Loan into the trust was provided.

*IndyMac Receivership and Transfer of Assets:* Office of Thrift Supervision Order No. 2008-24, appointing the Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac and as conservator for newly established successor entity, IndyMac Federal Bank, FSB, ("IndyMac Federal") dated July 11, 2008. On March 19, 2009, Office of Thrift Supervision Order No. 2009-17, replaced the FDIC as conservator for IndyMac Federal with the FDIC as receiver.

OneWest was established on March 19, 2009, as recognized by the FDIC. OneWest assumed the deposits of IndyMac Federal and purchased the service rights to various loans from the FDIC. The terms of this purchase were set forth in the Servicing Business Asset Purchase Agreement by and between the FDIC as receiver for IndyMac Federal and OneWest, dated as of March 19, 2009 (the "SBAPA"). The SBAPA includes Schedule 1.01(a), a schedule of mortgage loans subject to the SBAPA. A redacted copy of Schedule 1.01(a), provided in Deutsche Bank's pleadings, reflects that OneWest purchased servicing rights to the Loan.

Plaintiff asserts three challenges to Defendants' ability to enforce the Note: (1) the transfer of the Note to the trust occurred after the closing of the Trust, pursuant to the PSA terms, and is void as a matter of New York law, (2) the original endorsement by E-Loan includes an invalid address for E-Loan and (3) the loan contains "graphical artifacts" inconsistent with a genuine document.

**(1) Placement of Loan in trust**

Plaintiff alleges the Note and Deed of Trust were not conveyed to Deutsche Bank, as Trustee for the PSA, prior to the October 1, 2007 cut-off date provided in the PSA. The factual basis for this assertion is that the Assignment of Deed of Trust was not executed by MERS until August 12, 2011. Plaintiff appears to assert that if the Deed of Trust was assigned after the closing date of the PSA, the trust could not have received a

12

valid delivery of the loan based on the Note, and that any transfer after the closing date is void as a matter of New York law.

In support of his position, Plaintiff cites *Thomas A. Glaski v. Bank of America*, 2013 WL 4037310 (Cal. Ct. App. July 31, 2013). In *Glaski*, a California court of appeals interpreted New York law to hold that under New York law, a loan assignment occurring after the closing date of a PSA or trust agreement is *void*, not voidable. Consequently, the court found that the borrowers, who were not parties to the trust agreement, had standing to challenge foreclosure on the basis that the loan was void.

As determined in *In re Sandri,* 501 B.R. 369 (Bankr. N.D. Cal. 2013), the clear weight of authority is against *Glaski* and its reasoning is unpersuasive. The *Glaski* court's interpretation of New York law is contrary to the more well-reasoned cases that have found that an act in violation of a trust agreement is *voidable*, not void. And whereas a party to a voidable agreement may have standing to challenge a transfer that is allegedly contrary to the terms of the agreement, a borrower who is not a party to the agreement lacks standing to do so. *Id*. at 376. Further, *Glaski* relied upon a New York trial court decision and a bankruptcy court decision from the Southern District of Texas, both of which have been largely rejected in state and federal courts. *Id.*

Plaintiff is neither a party to the PSA, nor an intended beneficiary. Consistent with *Sandri* and the majority of California court decisions that have addressed this issue, this court finds that Plaintiff has no standing to successfully challenge the validity or effectiveness of the transfer. *Id. See also Patel v. Mortgage Electronic Registration Systems, Inc.*, 2013 WL 4029277 (N.D. Cal. Aug. 6, 2013); *Sami v. Wells Fargo Bank*, 2012 WL 967051 (N.D. Cal. Mar. 21, 2012) (collecting cases).

Further, Plaintiff provides no response to Defendants' position that they are entitled to enforce the debt even if the Loan was not deposited into the PSA. Specifically, if the Loan was not placed into trust, then whomever possesses the blank-endorsed Note memorializing the Loan is entitled to enforce the debt. Cal. Comm. Code § 3301. The Declaration of Charles Boyle is evidence that OneWest, as the designated loan servicer for Defendant Deutsche Bank, is in possession of the Note. Plaintiff has provided no evidence to the contrary.

13

**(2) E-Loan Endorsement**

Plaintiff challenges the endorsement by the original lender, E-Loan, to IndyMac on the basis that the stamp includes an invalid address for E-Loan. The E-Loan endorsement is as follows:

PAY TO THE ORDER OF IndyMac Bank, F.S.B. WITHOUT RECOURSE

<u>[Signature]</u>
DAVID DINI
SUPERVISOR WAREHOUSE MANAGEMENT
E-LOAN, INC.
5875 ARNOLD ROAD
DUBLIN, CA 94568

In October 2008, E-Loan filed an 8-K statement with the SEC asserting that effective October 10, 2003, E-Loan had relocated its executive offices to a location in Pleasanton, California. This relocation occurred approximately one year prior to origination of the Loan. Thus, Plaintiff asserts the invalid address for E-Loan makes the copy of the Note "extremely suspect."

California law governs the interpretation of the Note and determines whether the invalid address for E-Loan on the endorsement affects the Note's enforceability. California Commercial Code § 3204(a) defines indorsement of a negotiable instrument. It provides that an "'indorsement' means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument . . ., but regardless of the intent of the signer, *a signature and its accompanying words* is an indorsement … ." Emphasis added.

The language "Pay to the order of IndyMacBank, F.S.B without recourse" expresses a clear intent of E-Loan to transfer the Note. This language is accompanied by a signature on behalf of E-Loan. Thus, the signature and accompanying language satisfy the requirements for an endorsement. Defendants have asserted that OneWest is in possession of the Note. Thus, the endorsement, accompanied by delivery of the Note, constitutes an effective transfer, regardless of the address provided by E-Loan. As such, the invalid address for E-Loan does not constitute a material fact prohibiting summary judgment for Defendants.

14

Case: 13-04054    Doc# 35    Filed: 01/15/14    Entered: 01/16/14 10:28:23    Page 14 of 18

### (3) "Graphical artifacts"

Plaintiff further asserts that he has analyzed the two endorsement stamps on the Note using a "very high zoom factor" on a computer. Based on this review, he asserts that "[e]ach stamp has graphical artifacts that are inconsistent with what one would expect to find on a genuine document." As a result, Plaintiff believes that the Note could either be forged or fabricated.

The court finds that the evidence provided by Defendants is sufficient to establish that OneWest holds the Note, as servicer, on behalf of Deutsche Bank as Trustee; that the Deed of Trust was properly assigned to Deutsche Bank, and that Defendants are thereby entitled to enforce the Note. These "graphical artifacts" are quite literally, a "scintilla of evidence" insufficient to establish a genuine issue of material fact. Here, the court finds that the record taken as a whole could not lead a rational trier of fact to find for Plaintiff.

### c. Remaining Claims

#### (1) Claim II: Cancellation of Instruments

Plaintiff's Claim II asks the court to cancel as void a number of documents and court filings related to the assignment of the DOT encumbering the Property and the subsequent Trustee's Sale. Defendants urge the court to view Plaintiff's Claim II as essentially a wrongful foreclosure claim that requires compliance with the tender rule. Plaintiff is barred from asserting Claim II to the extent that it seeks to challenge the foreclosure proceedings, as Plaintiff does not allege that it is willing and able to tender the amount due on the loan. *Rivac v. Ndex W. LLC*, 2013 WL 6662762, *5 (N.D. Cal. Dec. 17, 2013). No exception to the tender rule applies. Plaintiff does not attack the validity of the underlying debt, but rather asserts that Defendants hold no interest in the underlying debt. Nonetheless, for the sake of judicial efficiency, the court will address Plaintiff's claim under Cal. Civ. Code § 3412.

Cal. Civ. Code § 3412 allows for the cancellation of a written instrument, "in respect to which there is a reasonable apprehension that if left outstanding[,] . . . may cause serious injury to a person against whom it is void or voidable." Based on the evidence provided and the court's finding that there is no genuine issue as to any material fact surrounding NDEx and OneWest's authority to act on behalf of Deutsche Bank, the court

15

finds no reasonable reason for apprehension that the documents Plaintiff seeks to cancel may cause serious injury to the Plaintiff.

With respect to the Assignment Deed of Trust, Plaintiff has no standing to challenge MERS' assignment of the DOT to Deutsche Bank. Consistent with the rationale in *Tatola v. HSBC Bank USA,* 2011 WL 5025072 (N.D. Cal. Oct. 21, 2011), Plaintiff here is not a party to, nor a beneficiary to the agreement between MERS and Deutsche Bank. As Plaintiff acknowledges in his pleadings, he remains obligated on the underlying debt. This court finds that Plaintiff has not sufficiently alleged specific harm or serious injury. *Accord Cordero v. Bank of Am.,* 2013 WL 4590826 (C.D. Cal. Aug. 28, 2013).

Thus, with respect to Claim II, judgment as a matter of law in favor of Defendants is appropriate.

### (2) Claim III: Unfair Business Practices

Plaintiff apparently contends that Defendants acted in such a way as to mislead Plaintiff into believing that Deutsche Bank has a security interest in the Property and subsequently took unlawful actions to recover on Plaintiff's obligation. A claim for unfair business practices under California Business & Professions Code §§ 17200, *et seq.* requires a showing of a violation of some underlying law. *Lazar v. Hertz Corp.*, 69 Cal.App.4th 1494, 1505 (Ct. App. 1999).

Plaintiff asserts that Defendants' actions violated New York trust law, however Plaintiff has no standing to bring forth a claim based on New York trust law. Thus, those alleged violations cannot provide a basis for Plaintiff's unfair business practices claim. Plaintiff additionally argues that Defendants' alleged fabrication of the Assignment and fraud against the borrower and the County Recorder constitute sufficient underlying claims for his unfair business practices claim. Having rejected Plaintiff's allegations regarding the impropriety of the Assignment, the court similarly rejects Plaintiff's unfair business practices claim, which relies upon the success of such allegations.

### (3) Claim IV: TILA Violations

Plaintiff's Claim IV seeks damages for Defendant Deutsche Bank's alleged failure to comply with TILA's notice requirements for the assignment of certain mortgages. A claim for damages under TILA,

16

however, must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *Rivac v. Ndex W. LLC*, 2013 WL at *11.

As Plaintiff notes in the Complaint, the Assignment Deed of Trust was executed prior to and recorded on August 21, 2011. The Complaint was filed on March 11, 2013, outside of the one-year limitations period on Plaintiff's claim. Consequently, the court finds that Plaintiff is barred from asserting Claim IV.

**VI.     Conclusion**

The court finds that Defendant Deutsche Bank has demonstrated that it has a valid, enforceable interest in the Note and Deed of Trust. The court further finds that NDEx and OneWest had the authority to act on behalf of Deutsche Bank in the foreclosure proceedings. Since the court finds for Defendants on Claim I, Claims II and III fail. Further, the court finds that Claim IV is barred by the statute of limitations.

Consequently, the court finds that Defendants are entitled to summary judgment, as Defendants have established there is no genuine dispute as to material facts, and they are entitled to summary judgment as a matter of law.

Defendants are requested to submit a judgment consistent with this decision.

**END OF MEMORANDUM DECISION**

COURT SERVICE LIST

All Recipients